**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **MARGUERITE EVANS WILLNER,** | ) | |
| **MICHAEL A. WILLNER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:05cv1315** |
| | ) | |
| **JOHN T. FREY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiffs are landowners who lost a portion of their property in a state adverse possession litigation and now seek to recover that property by claiming in this case that Virginia's law of adverse possession, as applied to them in the earlier state case, violated the Takings Clause of the Fifth Amendment, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Plaintiffs' effort to recover that property in this suit fails for a variety of reasons.

### I.

This dispute began over a piece of land located in Mason Neck, Virginia on the banks of the Potomac River. In 1989, the plaintiffs, Michael and Marguerite Willner, purchased an eleven acre tract of land in Fairfax County on which they built their home. Three years later Sheldon Leggett purchased an adjacent parcel of land. On August 13, 2002, Leggett and his wife filed suit against the Willners in the Circuit Court for Fairfax County (hereinafter referred to as *Fairfax I*) claiming that the Leggetts and their predecessors in title had continuously, visibly, and adversely possessed a portion of the Willners' land for a period of more than 15 years, and therefore were entitled to the land under the law of adverse possession, as codified at Virginia

Code §§ 8.01-131 and 8.01-236.[1]  *Fairfax I* proceeded under the well-settled Virginia legal principle that "[t]o establish title to real property by adverse possession, a claimant must prove actual, hostile, exclusive, visible, and continuous possession, under a claim of right, for the statutory period of 15 years."  *Quatannens v. Tyrrell*, 268 Va. 360, 368, 601 S.E.2d 616, 620 (2004) (quoting *Grappo v. Blanks*, 241 Va. 58, 61-62, 400S.E.2d 168, 170-71 (1991)).  At no time during *Fairfax I* did the Willners raise, plead, or argue that Virginia's law of adverse possession was unconstitutional for any reason.  On March 26, 2004, after a seven day bench trial, the Fairfax County Circuit Court judge found that the Leggetts had satisfied their burden of proving the elements of adverse possession by clear and convincing evidence, and accordingly ordered title to the disputed land transferred to the Leggetts.  *Leggett v. Willner*, Law No. 206590 (Cir. Ct. Fairfax Va. 2004).  Thereafter, the defendant, John T. Frey, acting in his official capacity as the Clerk of the Fairfax County Circuit Court, recorded the Final Order in the land

---

[1]The Virginia Code incorporates the common law in § 8.01-131 which provides, in pertinent part, that:

> A. The action of ejectment is retained, subject to the provisions hereinafter contained, and to the applicable Rules of Court.

> B. Such action may be brought in the same cases in which a writ of right might have been brought prior to the first day of July, 1850, and by any person claiming real estate in fee or for life or for years, either as heir, devisee or purchaser, or otherwise.

The statute of limitations is derived from Va. Code § 8.01-236, which provides, in pertinent part, that:

> No person shall make an entry on, or bring an action to recover, any land unless within fifteen years next after the time at which the right to make such entry or bring such action shall have first accrued to such person or to some other person through whom he claims; provided that an action for unlawful entry or detainer under § 8.01-124 shall be brought within three years after such entry or detainer.

records of Fairfax County.

On June 24, 2004, the Willners appealed this decision to the Supreme Court of Virginia , which denied the Willners' petition for appeal. *Leggett v. Willner*, Law No. 206590 (Cir. Ct. Fairfax Va. 2004), *pet. for appeal denied*, *Willner v. Leggett*, R. 041476 (Va. 2004). On November 17, 2004, the Willners' petition for rehearing was likewise denied. *Leggett v. Willner*, Law No. 206590, (Cir. Ct. Fairfax Va. 2004), *pet. for rehearing denied, Willner v. Leggett*, R. 041476 (Va. 2004).

After they had exhausted their appeal in *Fairfax I*, the underlying adverse possession case, the Willners filed a second civil suit in the Fairfax County Circuit Court (hereinafter referred to as *Fairfax II*), this time against the Commonwealth of Virginia, challenging Virginia's law of adverse possession on state constitutional grounds. The Willners' motion for judgment in *Fairfax II*, filed on July 5, 2005, contained three counts:

1.   Count One alleged that the Commonwealth of Virginia, through the operation of Va. Code § 8.01-236, had taken the Willners' property for public use without just compensation in violation of Article I, § 11 of the Virginia Constitution, and that the Willners were thereby entitled to just compensation.

2.   Count Two alleged in the alternative that the property had been taken for private use in violation of Article I, § 11 of the Virginia Constitution.

3.   Count Three of the Willners' motion for judgment alleged that the law of adverse possession, as applied to the Willners, deprived them of property without due

process of law in violation of Article I, § 11 of the Virginia Constitution.[2]

Nor did the Willners overlook any corresponding potential federal constitutional claims; to the contrary, they explicitly declined to assert any such claims in *Fairfax II*, claiming they were entitled to reserve the right to bring such claims in federal court.  Specifically, the motion for judgment in *Fairfax II*, under the heading "Reservation of Jurisdiction," stated as follows:

> The Willners have rights guaranteed to them including, but not limited to, those protections guaranteed to them under the just compensation and due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution, rights which have been violated by Defendant as a result of actions set forth herein.  The Willners reserve the right to all claims over which subject matter presently lies, or which may later become ripe, in the courts of the United States.

In response to this motion for judgment, the Commonwealth filed a demurrer,[3] arguing that the Commonwealth's resolution of a property dispute between two private parties pursuant to Va. Code § 8.01-236 violates neither the Virginia Constitution nor the U.S. Constitution, and that the statute had provided ample due process to the Willners.  During oral argument on the demurrer, the Fairfax County Circuit Court orally sustained the Commonwealth's demurrer, but specifically refused the Commonwealth's request to rule on the federal claims the Willners sought to reserve for a later day in federal court.[4]  On September 15, 2005, the Fairfax County

---

[2]The Due Process Clause contained in Article I, § 11 of the Virginia Constitution, provides that "no person shall be deprived of his life, liberty, or property without due process of law. . . ."

[3]A demurrer is the Virginia procedural analog to Rule 12(b)(6), Fed.R.Civ.P.  *See Southern Ry. Co. v. Darnell*, 221 Va. 1026, 1029 n.2, 277 S.E.2d 175, 177 n.2 (1981) ("[T]he only issue at the demurrer stage is whether the plaintiff has stated a cause of action.").

[4]*See* Hearing Transcript, 9/2/05, p.20 (Va. Cir. Ct., Fairfax County) ("I'm not going to comment on any federal implications.").

Circuit Court issued a formal Order sustaining the Commonwealth's demurrer and dismissing *Fairfax II* with prejudice.

On September 27, 2005, the Willners filed a motion to suspend the Final Order in *Fairfax II* or, in the alternative, to vacate the Final Order and grant leave to amend the motion for judgment. More specifically, citing the United States Supreme Court's recent opinion in *San Remo Hotel, L.P. v. City & County of San Francisco*, 125 S.Ct. 2491, 2497 (2005) (holding that federal takings claims reserved in state court proceedings are subject to the principles of res judicata and collateral estoppel, and not reviewed in federal court *de novo*), the Willners sought to suspend the September 15, 2005 Order in order to allow them to pursue their federal claims in federal court. In the alternative, the Willners sought an amendment to their motion for judgment that would allow them to add to *Fairfax II* their claims under the Fifth and Fourteenth Amendments of the United States Constitution. On November 4, 2005, the Fairfax County Circuit Court denied the Willners' motion to suspend or vacate the Final Order. *See Marguerite Evans Willner v. Commonwealth of Virginia*, Law No. 05-4075 (November 4, 2005). It also denied the proposed amendments to the motion for judgment because it viewed the proposed amendments as futile. *Id.* On November 18, 2005, the Willners appealed this decision to the Supreme Court of Virginia. This appeal is pending.[5]

_____

[5]Surprisingly, neither the complaint in this case, nor any pleading filed by, or on behalf of the Willners in this case, disclosed the existence of *Fairfax II*. Nor did the Willners' counsel cite or call attention to the Supreme Court's decision in *San Remo Hotel, L.P. v. City and County of San Francisco, California*, 125 S.Ct. 2491 (2005), which the Willners were aware was potentially controlling in this case, as they cited it in their motion for reconsideration after the adverse ruling in *Fairfax II*. Although there is no reason to conclude that counsel in this case intentionally misled the Court, it is important to avoid even an inference of a failure to make full disclosure of relevant proceedings and potentially controlling precedent as "[t]here are circumstances where failure to make a disclosure is the equivalent of an affirmative

Two days before filing the notice of appeal to the Supreme Court of Virginia, the Willners filed the instant federal complaint naming as defendant John T. Frey, the clerk of the Fairfax County Circuit Court, acting in his official capacity.  This complaint contains three counts:

1.      Count One seeks a declaration pursuant to 28 U.S.C. § 2201[6] that the disputed property was taken by Frey, acting in his official capacity, in violation of the Takings Clause of the Fifth and Fourteenth Amendments of the U.S. Constitution, and an injunction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2202[7] directing Frey to remove the Final Order in *Fairfax I* from the land records of Fairfax County.

2.      Count Two of the complaint seeks a declaration that Va. Code § 8.01-236, as-applied to the Willners, violates the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution and the same injunctive relief.

3.      Count Three seeks a declaration that Va. Code § 8.01-236 violated the Willners'

---

misrepresentation." *See* Va. Code of Professional Conduct § 3.3(a)(1), Comment 1.

[6]28 U.S.C. § 2201 provides:

In a case of actual controversy within its jurisdiction . . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

[7]28 U.S.C. § 2202 provides:

Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

rights under the Equal Protection Clause of the Fourteenth Amendment of the

United States Constitution because:

> while the Willners forfeited the title to the disputed property for
> failure to eject the Leggetts and their predecessors in title from
> their claim of ownership to the disputed property within 15 years of
> the accrual of the Willners' right to do so, the Leggetts and their
> predecessors in title were not equally in jeopardy of losing title to
> the disputed property for failing to eject the Willners from their
> claim of ownership within 15 years of the cause of action accruing
> in the Leggetts and their predecessors in title.

Complaint ¶ 54.  As in the other two counts, the Willners also seek an injunction

in this count pursuant to 28 U.S.C. § 2202 and 42 U.S.C. § 1983, directing Frey to

remove the Final Order from the land records of Fairfax County.

Frey's motion to dismiss pursuant to Rule 12(b)(6) has been fully briefed and argued and is now

ripe for disposition.

## II.

Frey raises several potentially dispositive non-merits defenses to the Willners' federal

complaint.  First, he argues that principles of res judicata bar the Willners from rearguing in

federal court issues already resolved in the state courts.  In the alternative, he argues that the

Willners' complaint is, in essence, an attempt to seek appellate review of a state court decision in

a federal district court in contravention of the *Rooker-Feldman* doctrine.  *See Exxon Mobil Corp.

v. Saudi Basic Industries*, 544 U.S. 280, 125 S.Ct. 1517, 1521 (2005).  Finally, Frey also

contends that he is entitled to sovereign immunity and derivative absolute judicial immunity.

These defenses are addressed seriatim.

## A. Res Judicata

The starting point in considering the preclusive effects of *Fairfax I* and *Fairfax II* is the recognition that a federal court is bound by 28 U.S.C. § 1783 to abide by principles of res judicata and collateral estoppel.[8]  And, "[i]t has long been established that § 1783 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments.  Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the state from which the judgment is given." *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (quoting *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481-482 (1982)).  Because the prior judgments in *Fairfax I* and *Fairfax II* are from the Fairfax County Circuit Court, Virginia principles of res judicata apply here with respect to both.

The preclusive effect of the judgment in *Fairfax I* depends on the breadth of res judicata under Virginia law.  According to some formulations, res judicata precludes "parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 95 (1980).  Under this broad formulation of the doctrine, the Willners would be precluded from bringing this suit since they could have challenged the constitutionality

---

[8]Article IV, § 1, of the United States Constitution demands that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.  And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."  Congress accepted this invitation to codify the Full Faith and Credit Clause in 1790, and it "has existed in essentially unchanged form since its enactment. . . ." *Allen v. McCurry*, 449 U.S. 90, 96 n.8 (1980).  In its current form, the statute provides that "judicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State. . . ."  28 U.S.C. § 1783.  As the Supreme Court has recently reaffirmed, "[t]his statute has long been understood to encompass the doctrines of res judicata, or 'claim preclusion,' and collateral estoppel, or 'issue preclusion.'" *San Remo Hotel, L.P. v. City and County of San Francisco, California*, 125 S.Ct. 2491, 2500 (2005) (citing *Allen v. McCurry*, 449 U.S. 90 (1980)).

of Virginia's adverse possession statute as a defense to the original ejectment action by the

Leggetts.  *See San Remo*, 125 S.Ct. at 2507.  Yet, this formulation does not govern here, as the

doctrine of res judicata is considerably narrower under the decisions of the Supreme Court of

Virginia.  As that Court has stated:

> Four elements must be present before res judicata can be asserted to bar a
> subsequent proceeding: (1) identity of the remedies sought; (2) identity of the
> cause of action; (3) identity of the parties ; and (4) identity of the quality of the
> persons for or against whom the claim is made.

*Smith v. Ware*, 244 Va. 374, 376, 421 S.E.2d 444, 445 (1992).

Under this more restrictive formulation of the res judicata doctrine, *Fairfax I* does not

preclude the Willners from bringing this lawsuit against the Commonwealth.  A comparison of

*Fairfax I* with this suit confirms this conclusion.  There is no identity of parties, causes of

actions, or remedies sought.  In *Fairfax I*, the Willners were defendants in an ejectment action

brought by the Leggetts pursuant to the law of adverse possession.  In this case, the Willners sue

an official of the Commonwealth of Virginia for abrogation of their federal constitutional rights,

and seek declaratory and injunctive relief.  Thus, while the Willners could have argued their

federal constitutional claims as a defense in *Fairfax I*, their failure to do so does not foreclose

this lawsuit under Virginia's law of res judicata.

The same result obtains with regard to *Fairfax II*, but for a different reason.  Virginia law

provides that the preclusive effect of res judicata and collateral estoppel do not apply to a prior

judgment until that judgment is final.  *See Norris v. Mitchell*, 255 Va. 235, 239-40, 495 S.E.2d

809, 812 (1998).  In determining finality, Virginia is among those states that do not afford

preclusive effect to a judgment when the judgment is the subject of a pending appeal.  *See Faison*

*v. Hudson*, 243 Va. 413, 419, 417 S.E.2d 302, 305 (1992) ("[A] judgment is not final for the

purposes of res judicata or collateral estoppel when it is being appealed or when the time limits

fixed for perfecting the appeal have not expired."); *Arkansas Best Freight System, Inc. v. H.H.*

*Moore*, 244 Va. 304, 307, 421 S.E.2d 197, 198 (1992).  Because the record currently reflects that

the Willners' notice of appeal to the Supreme Court of Virginia, filed on November 18, 2005,

remains pending, the dismissal of the Willners' Virginia constitutional claims by the Fairfax

County Circuit Court has no preclusive effect on the instant case.[9]

## B. The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine is a jurisdictional bar to federal district court review of

state court judgments, and is based on the Supreme Court's exclusive appellate jurisdiction over

such judgments.  *See Exxon Mobil Corp. v. Saudi Basic Industries*, 544 U.S. 280, 125 S.Ct.

1517, 1521 (2005) (citing 28 U.S.C. § 1257); *District of Columbia Court of Appeals v. Feldman*,

460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).  As recently

explicated by the Supreme Court, the *Rooker-Feldman* doctrine operates only in a narrow set of

circumstances, namely: "cases brought by state-court losers complaining of injuries caused by

state-court judgments rendered before the district court proceedings commenced and inviting

district court review and rejection of those judgments."  *Exxon Mobil*, 125 S.Ct. at 1521-22.

---

[9]Because the *Fairfax II* judgment is not final, it is unnecessary to consider the effect, if
any, of the Willners' attempt to reserve their federal claims.  Had the judgment in *Fairfax II* been
final, it is unlikely the Willners' reservation would have been effective to avoid the preclusive
effects of that judgment.  *See Bill Greever Corp. v. Tazewell National Bank*, 256 Va. 250, 258,
504 S.E.2d 854, 859 (1998) (holding that only the defendant may waive the effect of res
judicata).  *See also, San Remo Hotel, L.P. v. City and County of San Francisco, California*, 125
S.Ct. 2491, 2502 (2005) (describing the narrow circumstances in which a party may reserve
federal claims in state courts).

Furthermore, the doctrine does not deprive federal district courts jurisdiction over a matter that has already been litigated in state court as long as a federal plaintiff "presents some independent claim." *Exxon Mobil*, 125 S.Ct. at 1527 (quoting *GASH Assoc. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).  Because the *Exxon-Mobil* decision involved parallel litigation, the Supreme Court did not explain what constitutes an "independent claim," nor did it specifically address the precise question presented here, namely, whether parties who lost a state court judgment can seek reversal of that judgment in federal court by mounting an as-applied constitutional challenge to the statute pursuant to which the state court judgment was issued. Although the Supreme Court has not specifically addressed this question, the answer is nonetheless apparent from existing authority.

Particularly instructive on this question is *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983), one of the cases from which the *Rooker-Feldman* doctrine derives its name.  In *Feldman*, the Supreme Court addressed whether federal district court plaintiffs could challenge their exclusion from the District of Columbia bar by decision of the District of Columbia Court of Appeals pursuant to the local bar admission rule.  *Feldman*, 460 U.S. at 465.  That rule prohibited the admission of lawyers, like the *Feldman* plaintiffs, who had not graduated from an accredited law school.  *Id.*  The *Feldman* plaintiffs challenged in  federal district court both the failure of the District of Columbia courts to grant a waiver of the rule (as was the common practice), and the constitutionality of the bar admission rule itself.  *Id.* at 472-73.  In deciding whether the district court had jurisdiction over their claims, the Supreme Court examined the "difference between seeking review in a federal district court of a state court's final judgment . . . and challenging the validity of [the rule itself]." *Id.* at 483-84.  The Supreme Court

held that the district court did not have jurisdiction over whether the state court had acted

arbitrarily and capriciously in refusing to grant a waiver, but did have jurisdiction over a facial

constitutional challenge to the rule.  *Id.* at 486-87.  As the opinion makes clear, this distinction

was based on the fact that review of the refusal to grant the waiver would require review of a

judicial act, whereas a facial challenge to the rule required review of a legislative act.  *Id.*

      The rationale of *Feldman* makes clear that the question whether the Willners may bring

their claims in federal district court depends on whether their challenge to Virginia's adverse

possession statute is facial or as-applied.  If the former, then it may proceed, because the

plaintiffs would then be challenging an act of the Virginia state legislature.  But if the latter, then

it is barred by the *Rooker-Feldman* doctrine because the constitutional challenge is "inextricably

intertwined" with the state court's judgment.  *Feldman*, 460 U.S. at 486-87.  In this regard, it is

not necessary for the state-court loser to have raised his claims in the state court, as long as the

decision is seeking "redress for an injury caused by the state-court decision itself."  *Davani v.

Virginia DOT*, 434 F.3d 712, 719 (4th Cir. 2006); *See also Hoblock v. Albany County Bd. of

Elections*, 422 F.3d 77, 87 (2d Cir. 2005) ("[A] federal plaintiff cannot escape the

Rooker-Feldman bar simply by relying on a legal theory not raised in state court.").  In sum, if

the federal suit seeks reversal of the state court decision itself, on whatever ground, it is a

collateral attack on the judgment over which the federal district courts lack jurisdiction.  The

Second Circuit recently illustrated the rational for this principle with the following hypothetical

example:

        Suppose a state court, based purely on state law, terminates a father's parental
        rights and orders the state to take custody of his son. If the father sues in federal
        court for the return of his son on grounds that the state judgment violates his

> federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.

*Hablock v. Albany County Bd. of Election*, 422 F.3d 77, 87 (2d Cir. 2005).

In the instant case, it is indisputable that the Willners' complaint challenges the state court judgment in *Fairfax I*, a judgment that is not subject to review in any federal court but the Supreme Court of the United States.  The complaint includes a litany of facts concerning the Willners' use of the property, their payment of taxes on the property, and the Leggets' failure to provide actual notice of their claim to the title–in short, the very facts at issue in the adverse possession litigation in *Fairfax I*.  The Willners proceed in Counts I-III to contend that Virginia's adverse possession statute is unconstitutional *as-applied* to the Willners in this specific case, and seek an injunction ordering the clerk to remove the Final Order from the land records of Fairfax County.[10]  Consideration of their federal claims thus necessarily involves reexamination of the Fairfax County Circuit Court's application of the statute in *Fairfax I*, which this court is without jurisdiction to do.

## C. Sovereign Immunity

Frey next contends that the Willners' suit is barred by the sovereign immunity of the Commonwealth of Virginia embodied in the Eleventh Amendment of the United States Constitution.[11]  Although not within the terms of the Eleventh Amendment itself, the principle of

---

[10]Thus, the Willners seek reversal of the state court judgment not only in the legal sense, but in the physical sense as well.

[11]This Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

-13-

sovereign immunity has long been held to preclude suits brought by a State's citizen against the State in federal court. *See Idaho v. Coeur D'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). It is equally well established that the Eleventh Amendment bars suits in which the state is not a named party, but is the real party in interest. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464 (1945). Finally, while Congress has the power to abrogate a state's sovereign immunity under the powers granted to it by the Civil War Amendments, it is established law that Congress did not exercise this power when it passed 42 U.S.C. § 1983. *See Edelman v. Jordan*, 415 U.S. 651, 676 (1974); *Quern v. Jordan*, 440 U.S. 332, 338 (1979).

The Willners' contend, however, that the instant suit fits into a well recognized exception to the general bar of suits against states recognized in *Ex Parte Young,* 209 U.S. 123 (1908). In that case, and its progeny, the Supreme Court has allowed suits against state officials acting in their official capacity[12] where the relief is properly characterized as prospective in nature. *See Verizon,* 535 U.S. at 645. Whether a request for injunctive relief is prospective, in turn, requires a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* (quoting *Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).[13] The distinction between prospective and retrospective relief

---

[12]The fictional distinction between suing a state official acting in his capacity, which is allowed under *Ex Parte Young*, and suing the state itself, which is prohibited, has been noted repeatedly, but upheld nevertheless. *See, e.g., Coeur d'Alene*, 521 U.S. at 269-70.

[13]Frey's contention that a state official acting in his official capacity is not a person and therefore not subject to suit under 42 U.S.C. § 1983, likewise depends on whether the Willners' requested relief can be properly characterized as prospective in nature. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n.10 (1989) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because

is best exemplified by the facts of *Ex parte Young* itself.  In *Young*, the question was whether railroad shareholders could bring a suit in the federal district court enjoining the enforcement of a recently enacted state statute setting railroad rates. *Ex parte Young*, 209 U.S. 123, 130 (1908). Answering in the affirmative, the Supreme Court relied largely on the inadequacy of a means to test the constitutionality of the statute in state court.  *Id.* at 146.  In reaching this result, the Supreme Court noted that the penalties for violations of the statute had been made so severe that recourse to state courts by litigating a "test" violation would require a railroad company to bear a risk "the company ought not be required to take."  *Id.* at 165.[14]  Thus, the plaintiffs were allowed recourse to the federal courts in order to relieve them of the Hobson's choice between violating the statute and suffering substantial penalties on the one hand, or suffering the ongoing violation of their federal constitutional rights on the other.  *Id.*[15]  Thus, one of the primary rationales for the exception to state sovereign immunity recognized in *Ex parte Young* is to provide an adequate forum when federal constitutional rights are in peril and the state court's remedy is inadequate. As the Supreme Court has stated, "[t]he [*Ex parte Young*] exception has been 'tailored to conform as precisely as possible to those specific situations in which it is necessary to permit the federal courts to vindicate federal rights."  *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261,

---

'official-capacity actions for prospective relief are not treated as actions against the State.'") (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).

[14]Because the severity of the penalties prevented the shareholders from testing the sufficiency of the act in state court, the Supreme Court found the penalties for violation of the act facially unconstitutional.  *Id.*

[15]By comparison, in *Edelman v. Jordan*, 415 U.S. 651 (1974), the Supreme Court refused to allow injunctive relief that would result in the retroactive payments of benefits wrongfully withheld, and rejected the argument that "equitable restitution" is a permissible form of relief under *Ex Parte Young.  Edelman*, 415 U.S. at 664-668.

277 (1997) (quoting *Papasan v. Allain*, 478 U.S. 265, 277 (1986)).

This case does not fit within the *Ex parte Young* exception.  The injury for which the Willners seek redress is plainly not a matter of impending peril, but the loss of their property through the operation of Virginia's adverse possession statute nearly two years ago.  Nor did the Willners lack an adequate forum in which to vindicate the claims they assert here.  Indeed, they have done so in *Fairfax I* or *Fairfax II*.  Moreover, the Willners do not seek to avoid a future violation of their federal rights, but restitution of property they claim was wrongfully taken from them.  Put simply, the Willners want their land back.[16]  The relief they seek here, no matter how styled, is retrospective, not prospective, and the Eleventh Amendment therefore bars this suit. *See CSX Transp., Inc. v. Board of Public Works of the State of West Virginia*, 138 F.3d 537, 542-43 (4th Cir. 1998) (refunding taxes is retrospective relief); *Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474, 496 (4th Cir. 2005) (expunging a failing grade from an academic record is retrospective relief); *Steffens v. Steffens*, 955 F.Supp. 101, 105 n. 5 (D.Colo. 1997) (injunction seeking to undo court-ordered sale of marital property in divorce proceeding is retrospective relief).  The Willners deliberately chose not to assert their federal constitutional claims in *Fairfax I* and *Fairfax II*, and to save them for a future federal court case presumably because they thought the state court inadequate to adjudicate these claims.  In these circumstances, "[i]t would be error coupled with irony" to bypass the dictates of the Eleventh Amendment.  *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 276 (1997).

_____

[16]In this respect, Frey's argument that Rule 19, Fed.R.Civ.P. requires joinder of the Leggetts may well have merit, but given the dismissal of the Willners' complaint here, there is no need to reach this issue.  *Cf. National Union Fire Ins. Co. v. Rite Aid of South Carolina, Inc.*, 219 F.3d 246, 251 (4th Cir. 2000) ("A court should hesitate to conclude . . . that a litigant can serve as a proxy for an absent party unless the interests of the two are identical.").

**D. Derivative Absolute Judicial Immunity**

The final issue to be addressed is whether Frey is entitled to derivative absolute judicial immunity because he was clearly acting within his official capacity when he recorded the judgment transferring title of the property to the Leggetts.

It has long been recognized as "a general principle of the highest importance to the proper administration of justice, that a judicial officer, in exercising the authority vested in him, should be free to act upon his own convictions, without apprehension of personal consequences to himself." *Stump v. Sparkman*, 435 U.S. 349, 355 (1978) (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1871)). For this reason, judicial officers are immune from liability for acts committed within the scope of their jurisdiction. *Sparkman*, 435 U.S. at 364. And, because the judicial decision-making protected by absolute judicial immunity is often carried out by court clerks, this immunity has been held to apply derivatively to clerks "who act in obedience to a judicial order or under the court's discretion." *McCray v. State of Maryland*, 456 F.2d 1, 5 (4th Cir. 1972); s*ee also*, *Battle v. Whitehurst*, 831 F.Supp. 522, 528 (E.D.Va. 1993); *Clay v. Yates*, 809 F.Supp. 417, 424 (E.D.Va. 1992). It follows that Frey is clearly entitled to claim derivatively the benefit of absolute judicial immunity.

Seeking to avoid this result, the Willners cite *Pulliam v. Allen*,[17] and argue that Frey is not entitled to judicial immunity because they are seeking injunctive and declaratory relief. *See Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984). Yet this decision (to the extent it has not been

───────────────────

[17]466 U.S. 522.

subsequently abrogated by Congress)[18] clearly applies only to *prospective* relief, and because the

relief the Willners seek is not prospective, *Pulliam* is not controlling here.  *See Id.* ("We

conclude that judicial immunity is not a bar to *prospective* injunctive relief against a judicial

officer acting in her judicial capacity.") (emphasis added).  For this reason, Frey is entitled to

derivative absolute judicial immunity.

## IV.

Although the Willners' claims are barred by the *Rooker-Feldman* doctrine, the Eleventh

Amendment, and derivative absolute judicial immunity, a brief discussion of the merits of their

constitutional claims is appropriate as an exercise of good judicial husbandry.  The Willners

allege that Virginia's law of adverse possession violates the Takings Clause of the Fifth

Amendment[19] and the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

As noted, Virginia's law of adverse possession distilled to its essence is as follows: "To establish

title to real property by adverse possession, a claimant must prove actual, hostile, exclusive,

visible, and continuous possession, under a claim of right for the statutory period of fifteen

years."  *Grappo v. Blanks*, 241 Va. 58, 61, 400 S.E.2d 168, 170 (1991).  The Willners argue that

---

[18]Congress effectively reversed the Supreme Court's holding in *Pulliam* by enacting the Federal Courts Improvement Act of 1996 ("FCIA"), Pub.L. No. 104-317, 110 Stat. 3847 (1996) (amending 42 U.S.C. § 1983).  Section 309(c) of FCIA bars injunctive relief in any section 1983 action "against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable."  *See Holbert v. Cohen-Gallet*, 2006 WL 47452 (E.D.N.Y. 2006).  Because the Willners do not seek prospective relief, it is unnecessary to decide whether this extension of judicial immunity applies derivatively to court clerks.  *See Hili v. Sciarrotta*, 140 F.3d 210, 215 (1998).

[19]The Fifth Amendment prohibition against the taking of private property for public use without just compensation applies against the States through the Fourteenth Amendment.  *See Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160 (1980).

the law, as-applied to them, violates their federal constitutional rights.

It is clear beyond dispute that Virginia's resolution of a private land dispute through the use of its law of adverse possession does not constitute a taking under the Fifth Amendment. As the Supreme Court has stated: "[J]ust as a State may create a property interest that is entitled to constitutional protection, the State has the power to condition the permanent retention of that property right on the performance of reasonable conditions that indicate a present intention to retain the interest." *Texaco v. Short*, 454 U.S. 516, 526 (1982). *See also Vincent Montoya v. Candido G. Gonzales*, 232 U.S. 375, 378 (1914). In this regard, the power of a state to transfer property to another after its abandonment for a certain period of time of time has long been recognized as valid. *See, e.g.*, *Hawkins v. Barney's Lessee*, 5 Pet. 457, 466 (1831) ("What right has any one to complain, when a reasonable time has been given him, if he has not been vigilant in asserting his rights?"). In short, "[i]n ruling that private property may be deemed to be abandoned and to lapse upon the failure of its owner to take reasonable actions imposed by law, this Court has never required the State to compensate the owner for the consequences of his own neglect." *Short*, 454 U.S. at 530.[20] In this regard, the Virginia courts have concluded that the Willners neglected to protect their property interests by objecting to the Leggetts' possession of their land, and the recognition of this fact is sufficient to defeat the Willners' Takings claim.

The Willners' Due Process argument fails as well. The Willners state that they had no notice that the Leggetts or their predecessors in title claimed to own the disputed property and

---

[20]Thus, the Willners' reliance on *Pascoag Reservoir & Dam, LLC v. Rhode Island*, 217 F.Supp.2d 206, *aff'd on other grounds*, 337 F.3d 87 (2003), is misplaced; that case is neither apposite nor persuasive. There, the State of Rhode Island–not a private party–had acquired a portion of the Pascoag Reservoir through adverse possession and prescriptive easement. *Pascoag*, 217 F.Supp.2d at 211.

had no notice that a cause of action against the Leggetts and their predecessors in title had

accrued to the Willners until after the expiration of the fifteen year period prescribed by Va. Code

§ 8.01-236.  The Willners contend that this lack of notice somehow violates the Due Process

Clause.

This argument is meritless.  The state, which of course must abide by the Due Process

Clause, satisfies its constitutional notice requirement by passing "a rule of law uniformly

affecting all citizens that establishes the circumstances in which a property interest will lapse

through the inaction of its owner,"[21] and by ensuring that the Willners receive notice of the

judicial proceeding which affects their property interest and an adequate opportunity to be heard

at that hearing.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("An

essential principle of due process is that a deprivation of life, liberty, or property be preceded by

notice and opportunity for hearing appropriate to the nature of the case.").  In this regard, the

Willners do not argue that the state failed to provide notice of the statute, nor do they contend

that the notice of the judicial proceeding through which the Leggetts acquired title to the disputed

property was insufficient, or that they were deprived of an adequate opportunity to be heard.

Instead, the Willners argue that the Leggetts' failed to provide the Willners adequate notice of

their hostile interest in the disputed land.  Of course, the Leggetts cannot be considered state

actors, and therefore need not abide by the notice requirement of the Due Process Clause.[22]  More

---

[21]*Short*, 454 U.S. at 537.

[22]*See National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988)
("Embedded in our Fourteenth Amendment jurisprudence is a dichotomy between state action,
which is subject to scrutiny under the Amendment's Due Process Clause, and private conduct,
against which the Amendment affords no shield, no matter how unfair that conduct may be.").

-20-

specifically, necessarily included in the general proposition that a private party need not inform an adverse party that the statute of limitations on its claim is about to expire, is the more specific proposition that one neighbor need not inform another that his rights in land are about to expire due to adverse possession. *Short,* 454 U.S. at 536. Further, even assuming that the plaintiffs have some right to notice of the running of a statute with respect to claims for adverse possession, the statute's open and continuous possession requirement provides just such notice. *LaDue v. Currell*, 201 Va. 200, 207, 110 S.E.2d 217, 222 (1959). For these reasons, the Willners' Due Process claim fails.

Finally, the Willners do not state a claim for relief under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Generally speaking, the Equal Protection Clause prohibits states from creating unreasonable, arbitrary, and invidious classifications. *Barefoot v. City of Wilmington*, 306 F.3d 113, 121 (4th Cir. 2002). Except in cases where a challenged law employs suspect classifications or significantly burdens a fundamental right, the law comports with the Equal Protection Clause if it is rationally related to a permissible government interest. *Id.* (citing *Pennell v. City of San Jose*, 485 U.S. 1, 14, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988)). Given this standard, Virginia's adverse possession statute plainly passes equal protection muster. Thus, the Commonwealth of Virginia has an obvious and legitimate interest in resolving land disputes among its citizens, and the classification the Willners propose, *i.e.*, those whose land is subject to adverse possession, can hardly be considered invidious. Therefore, the Willners' Equal Protection claim, like their Takings and Due Process claims, is meritless.

---

**IV.**

In sum, the Willners claims are barred from consideration by the *Rooker-Feldman*

doctrine, the Commonwealth of Virginia's sovereign immunity, and Frey's derivative absolute

judicial immunity.  But even assuming they were not, they would fail to state a claim for which

relief can be granted, and therefore must be dismissed.  An appropriate Order will issue.


_____/s/_____
Alexandria, VA                                    T. S. Ellis, III
March 15, 2006                                  United States District Judge